UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Liban G., <br><br> Petitioner, <br><br> v. <br><br> Kristi Noem, Secretary, U.S. Department of Homeland Security; Todd M. Lyons, Acting Director, U.S. Immigration and Customs Enforcement; and David Easterwood, Acting Director, St. Paul Field Office, Immigration and Customs Enforcement, <br><br> Respondents. | No. 26-CV-0301 (SRN/ECW) <br><br><br> **ORDER** |

Abdulwahid Osman, Abdulwahid Law Firm PLLC, 2929 Chicago Ave., Ste. 110, Minneapolis, MN 55407, and Robin Chandler Carr, Law Office of Robin Carr, 2929 Chicago Ave., Ste. 110, Minneapolis, MN 55407, for Petitioner

Ana Voss and Justin Merak Page, U.S. Attorney's Office, 300 S. 4th St., Minneapolis, MN 55415, for Respondents

SUSAN RICHARD NELSON, United States District Judge

Before the Court is Petition for a Writ of Habeas Corpus ("Petition") [Doc. No. 1] filed by Petitioner Liban G., who seeks immediate release from detention or, in the alternative, an opportunity for a bond hearing. Respondents oppose the Petition. (Resp'ts' Opp'n [Doc. No. 10].)

The Court has taken the Petition under advisement on the papers. For the reasons set forth below, the Petition is granted and the Court orders Liban G. to be released immediately.

1

I. **BACKGROUND**

Petitioner is a citizen of Somalia who entered the United States as a refugee on September 5, 2023. (Pet. [Doc. No. 1] ¶ 14 & Pet'r's Ex. 1.) His application for lawful permanent resident status is pending with United States Citizenship and Immigration Services ("USCIS"), which issued a notice of receipt on September 20, 2024. (Pet'r's Ex. 2.) On January 14, 2026, ICE agents arrested Petitioner in the parking lot of his place of employment in Shakopee, Minnesota. (Pet. ¶ 2.) He was arrested as part of Operation PARRIS [Post-Admission Refugee Reverification and Integrity Strengthening] in Minnesota, "a sweeping initiative reexamining thousands of refugee cases through new background checks and intensive verification of refugee claims." (Pet'r's Ex. 3.)

That same day, Petitioner filed the instant Petition seeking immediate release, or in the alternative, the opportunity for a bond hearing under 8 U.S.C. § 1226(a) before an Immigration Judge. (Pet. at 6–7.) In addition, he requested an order enjoining Respondents from transferring him outside the District of Minnesota. (*Id.* at 6.)

The following day, January 15, 2026, this Court issued an Order to Show Cause directing Respondents to respond to the Petition and temporarily enjoining them from transferring Petitioner out of the District of Minnesota or deporting him until the Court rules on the pending Petition. (Order to Show Cause [Doc. No. 5] at 1–2.)

On January 16, 2026, Petitioner informed his family that he was transferred outside the District of Minnesota and was detained in ICE custody at the Department of Homeland Security ("DHS")'s El Paso Camp East Montana detention facility. (Pet'r's TRO Mot. at

2.) He requested that Respondents return him to Minnesota and immediately release him upon his return. (*Id.*)

On January 16, 2026, at 5:26 p.m., the Court granted Petitioner's Motion for a TRO and ordered Respondents to return Petitioner to the District of Minnesota within 48 hours, i.e., January 18, 2026, at 5:26 p.m. (TRO [Doc. No. 8] at 6.) Upon his return, Respondents were ordered to either release Petitioner or detain him in the District of Minnesota while his Habeas Petition remains pending. (*Id.*) The Court also ordered Respondents to notify the Court of Petitioner's return to Minnesota within 24 hours of his return. (*Id.*)

As to Respondent's compliance with the TRO, on January 19, 2026, Respondents stated that they "immediately took steps to accomplish [Petitioner's] return" and that he "will be placed on the next available flight back to Minnesota." (Resp'ts' TRO Response [Doc. No. 10] at 2 n.1.) After Respondents did not report Petitioner's return to Minnesota the following day, the Court entered the following text-only order on January 20, 2026:

> (Text-Only) ORDER FOR PARTY TO FILE DOCUMENT/RESPOND TO COURT. Starting today, Respondents shall update the Court daily, no later than 5:00 pm, on the status of transporting Petitioner back to Minnesota. The Court ordered Respondents to return Petitioner to Minnesota no later than 5:26 p.m. CST on January 18, 2026. Respondents have far exceeded that deadline.

(Jan. 20, 2026 Text-Only Order [Doc. No. 11].)

On January 20, 2026, at 4:46 p.m., counsel for Respondents filed an update, stating, "Respondents informed me that Petitioner was supposed to be on a flight today from Texas to Minnesota. Unfortunately, Petitioner was not put on the flight in Texas. I am following

3

up to find out the next flight available for Petitioner." (Resp'ts' Jan. 20, 2026 Ltr. [Doc. No. 12].)

On January 21, 2026, at 3:16 p.m., counsel for Respondents filed another update, stating, "Respondents have informed me that Petitioner will be placed on a flight to Minnesota tomorrow. I will inform the Court once Petitioner arrives in Minnesota." (Resp'ts' Jan. 21, 2026 Ltr. [Doc. No. 14].)

On January 22, 2026, Respondents failed to provide the Court with an update by 5:00 p.m., as required. Consequently, at 7:47 p.m., the Court entered an order to show cause why the Government should not be held in contempt of court. (Jan. 22, 2026 OSC [Doc. No. 15] ¶ 1.) The Court recounted Respondents' three violations of orders of this Court: (1) the January 15, 2025 Order to Show Cause [Doc. No. 5] that Respondents violated by moving Petitioner out of the District of Minnesota; (2) the January 16, 2026 TRO [Doc. No. 8] that Respondents violated by failing to return Petitioner to Minnesota no later than 5:26 p.m. on January 18, 2026; and (3) the January 20, 2026 Text-Only Order that Respondents violated on January 22, 2026 by failing to provide a daily update, no later than 5 p.m., on the status of transporting Petitioner back to Minnesota. (Jan. 22, 2026 OSC ¶¶ 3–5.) Accordingly, the Court scheduled a show cause video hearing for January 23, 2026 at 2:00 p.m. on the issue of holding Respondents in contempt of court. (*Id.* ¶ 1.) At the hearing, the Court ordered the attendance of Respondents' counsel of record, Ms. Voss and Mr. Page; the ICE Officer in Texas responsible for Petitioner's return to Minnesota; and one or both of Petitioner's counsel. (*Id.* ¶ 6.)

4

Approximately three hours later, at 10:36 p.m. on January 22, 2026, Respondents' counsel, Mr. Page, filed a letter to the Court, stating, "At 4:18 p.m. and at 9:28 p.m. I emailed ICE asking for an update on whether Petitioner was on a flight today to Minnesota. I have not received a response to my emails." (Jan. 22, 2026 Letter [Doc. No. 16].)

Today, January 23, 2026, at 8:47 a.m., Mr. Page filed another letter, stating, "At 11:31 p.m. last night, Laura Trosen, ICE's Deputy Chief Counsel, e-mailed and informed me that Petitioner was returned to Minnesota yesterday. Ms. Trosen requested that I ask the Court to not make ICE track down an officer in El Paso to discuss Petitioner's flight for today's hearing given that he has been returned to Minnesota." (Jan. 23, 2026 Letter [Doc. No. 17].) Respondents have returned Petitioner to Minnesota over one week after moving him out of state, in violation of this Court's January 15 Order and its TRO Order, and in contradiction to representations made by Respondents' counsel in letters dated January 20 and 21. According to DHS's Detainee Locator website, USCIS is detaining Petitioner at the Sherburne County Jail in Elk River, Minnesota. DHS, USCIS, *Online Detainee Locator System*, https://locator.ice.gov/odls/#/search (last visited Jan. 23, 2026 at 10:17 a.m.).

In response to the Petition, Respondents state that Petitioner entered the country as a refugee over a year ago and that his status had not been adjusted to lawful permanent resident at the time of his arrest. (Resp'ts' Opp'n at 2–3.) Thus, according to Respondents, 8 U.S.C. § 1159(a) authorizes Petitioner's mandatory detention. (*Id.*)

5

## II. DISCUSSION

Following lengthy screening and vetting procedures, refugees may be lawfully admitted to the United States under 8 U.S.C. § 1157. USCIS, *Refugees*, https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees (last visited January 15, 2026). Admission as a refugee is a distinct lawful immigration status. After residing in the United States for one year, refugees are required to apply for adjustment of status to lawful permanent residence. 8 U.S.C. § 1159(a). Specifically, 8 U.S.C. § 1159(a) states that an individual admitted as a refugee who has been physically present in the United States for over one year "shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title." 8 U.S.C. § 1159(a).

Section 1159 only contemplates DHS's "custody" of refugees for the limited purpose of conducting an inspection necessary to adjudicate adjustment of status under § 1159(a)(2). *E.E. v. Bondi*, No. 26-cv-314 (JWB/DTS) (D. Minn. Jan. 17, 2026) [Doc. No. 7 at 7]. As to detention, however,

> [n]othing in § 1159 authorizes detention untethered from that function. Nor does the statute mandate detention, prescribe a minimum duration of custody, or reclassify an admitted refugee as an "arriving alien" or "applicant for admission." The cross-reference to § 1225 provides the procedural mechanics of inspection, not an independent or mandatory detention regime. Custody under § 1159(a) is therefore lawful only to the extent it serves the inspection and examination contemplated by the statute.

*Roman N. v. Trump*, No. 26-cv-282 (JWB/DLM) (D. Minn. Jan. 19, 2026) [Doc. No. 6 at 5]. In fact, none of the cross-referenced provisions in 8 U.S.C. § 1159(a) from which

6

continued detention following "inspection and examination for admission" may emanate—§§ 1225, 1229a, or 1231—support Petitioner's detention.

First, mandatory detention under § 1225 only applies to certain arriving aliens who are inadmissible, 8 U.S.C. § 1225(b)(1), or who are considered "applicant[s] for admission," *id.* § 1225(b)(2)(A). *See also Maldonado v. Olson*, 795 F. Supp. 3d 1134 (D. Minn. 2025) (distinguishing between detention under §§ 1225(b)(2) and 1226(a)). Petitioner is not "arriving." He has been residing in the United States. Nor is he a person who has "not been admitted or paroled," as he was lawfully admitted to the United States on September 5, 2023. Accordingly, neither §§ 1225(b)(1) nor 1225(b)(2) subject Petitioner to mandatory detention.

Second, § 1231 does not support Petitioner's continued detention either. Section 1231 provides for the mandatory detention and removal of noncitizens ordered removed, directing that "[d]uring the removal period, the Attorney General shall detain the alien" during the 90-day "removal period" that generally runs from date that a removal order is administratively final. 8 U.S.C. § 1231(a)(1)(A)–(B), (a)(2)(A). Detention may be extended beyond 90 days if DHS determines that the person is "a risk to the community or unlikely to comply with the order of removal." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (citing 8 U.S.C. 1231(a)(6)). Nothing in the record demonstrates that Petitioner has been ordered removed, therefore he cannot be detained in accordance with § 1231. *Abdi F.W. v. Trump*, No. 26-cv-208 (KMM/SGE) (D. Minn. Jan. 21, 2026) [Doc. No. 7 at 6] (finding detention under § 1231 inapplicable where no evidence showed petitioner had been ordered removed from the United States).

Finally, § 1229a applies to "removal proceedings" and contains no standalone detention provisions. *See* 8 U.S.C. § 1229a. Even when removal proceedings are underway, "most aliens may be released on bond or paroled." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1226(a)(2), (c)). Again, nothing here demonstrates that Petitioner has been placed in removal proceedings. The detention provision that corresponds to § 1229a is 8 U.S.C. § 1226, but mandatory detention under § 1226(c) only applies to noncitizens who have been convicted of serious crimes, and discretionary detention under 1226(a) requires the issuance of a warrant. There is no showing here of a conviction for a serious crime, let alone any crime, nor is there evidence of a warrant. Accordingly, detention under § 1229a is inapplicable to Petitioner.

Section 1159's implementing regulations confirm the limited purpose of DHS's "inspection" under the statute. *See* 8 C.F.R. § 209.1(b), (d). After one year of presence in the United States, a refugee must submit an adjustment application and biometrics, and USCIS determines whether an interview or further examination is necessary. *Id*. Detention is not mandatory under the regulations, which do not contemplate prolonged custody in the absence of the statutory inspection, in any event.

Likewise, the agency's own guidance confirms that a refugee's failure to apply for adjustment of status "is not a sufficient ground to place them in removal proceedings, and therefore not a proper basis for detaining them." ICE Policy Memorandum 11039.1, issued on May 10, 2010 by ICE's Director, James Chaparro, addresses "Detention of Refugees Admitted Under INA [Immigration and Nationality Act] § 207 Who Have Failed to Adjust to Lawful Permanent Residence Status." (Pet'r Ex. 4 (P.M. 11039.1).) Again, here,

8

Petitioner did not fail to apply for adjustment of status. USCIS received his application, but one year and four months later, the agency has thus far failed to adjudicate it.

As to the decision to detain or release an unadjusted refugee, the ICE Policy Memorandum provides express time limits:

> Except in the case of emergency or other extraordinary circumstances, upon the arrest of an unadjusted refugee *upon reasonable belief of removability*, a DRO [Detention and Removal Operations] Field Office must determine, *no later than 48 hours after the arrest*, whether to release the individual or issue a Notice to Appear (NTA), Form I-862, indicating the removal charge(s) applicable to the alien. *See* 8 C.F.R. § 287.3(d); Memorandum from Asa Hutchinson, Undersecretary for Border and Transp. Sec., Guidance on ICE Implementation of Policy and Practice Changes Recommended by the Dep't of Justice Inspector Gen. 2 (Mar. 30, 2004). *If it becomes apparent earlier that no removability ground applies, the individual must be released promptly*.

(*Id.*) (emphasis added). If a refugee is to be issued an NTA, it must be served "promptly," and, in any case, within 72 hours of arrest, absent an emergency or other extraordinary circumstances. (*Id.* at 3.) Ultimately, if ICE fails to reach a determination about placing an unadjusted refugee in removal proceedings within 48 hours, "the DRO Field Office should release the alien with a reminder that the INA imposes an obligation upon him or her to apply for adjustment of status under section 209(a) and to provide DHS with updated address information. . . ." (*Id.* at 3–4.)

Regarding the effect of the failure to adjust status on removability, the ICE Policy Memorandum states,

> A refugee may not be placed in removal proceedings based on a failure to adjust status or to apply for adjustment of status because an alien's failure to adjust status or apply for adjustment under INA § 209(a) is not a ground of removability. Therefore, the only way DRO may place an unadjusted refugee in proceedings is if a violation of the INA can be established that is

9

> unrelated to the alien's failure to adjust, such as fraud or a criminal conviction that forms the basis for a charge under INA §§ 212 or 237.

(*Id.*)

Respondents do not challenge Petitioner's claim that he applied to adjust his status to that of lawful permanent resident when he was eligible to do so and that he is awaiting a decision from USCIS. Instead, they claim that Petitioner's detention is mandatory because he entered the United States on September 5, 2023, and despite their receipt of his pending application for adjustment of status on September 20, 2024, "it has been more than one year since Petitioner entered the United States." (Resp'ts' Opp'n at 2.) But refugees are not eligible to apply for adjustment of status until they have "been physically present in the United States *for at least one year*," 8 U.S.C. § 1159(a)(1)(B) (emphasis added), and USCIS controls the length of the review process. Even if a refugee filed an application for adjustment of status at the earliest possible opportunity—366 days after entry into the United States—Respondents still control the length of adjudication. The reason that Petitioner has not acquired permanent resident status is because Respondents have failed to adjudicate his pending application for permanent residence. It has been pending with USCIS for well over a year. "Respondents cannot justify [Petitioner's] continued detention through an open-ended assurance that they will get around to conducting the inspection and examination required by § 1159(a), which presents their only identified basis for continued detention." *Abdi F.W.*, No. 26-cv-208 (D. Minn. Jan. 21, 2026) [Doc. No. 7 at 8.].

10

Respondents' claims that Petitioner's detention "is not indefinite," his status is "preliminary," and that his "inspection will occur in due course" fail to justify his detention. (Resp'ts' Opp'n at 2–3.) There is no indication of whether and when inspection will occur. This Orwellian situation, in which a lawfully admitted refugee's personal liberty hangs in the balance, is rooted in USCIS's delay. Vague assurances of inspection "in due course" cannot serve as a lawful basis for Petitioner's open-ended detention.

Again, when "unadjusted" refugees are arrested for an inspection under § 1159, ICE must determine whether to release the individual or issue an NTA indicating the removal charges "no later than 48 hours after the arrest."[1]  (Pet'r Ex. 4 (PM 11039.1) at 2.) Respondents have unlawfully detained Petitioner for far longer than 48 hours. He has been detained since January 14, and ICE has now detained him for eight days. His detention is unsupported under the law.

In addition to violating the INA, Respondents have violated orders of this Court by moving Petitioner outside the District of Minnesota, and then, after the issuance of a TRO mandating his return to Minnesota no later than January 18, 2026 at 5:26 p.m., they failed

---

[1] Certain provisions of the INA and its implementing regulations, not at issue here, also contain time limits for review and examination. See 8 U.S.C. § 1357(a)(2) (addressing powers of immigration officers without a warrant and requiring that certain arrested aliens "shall be taken *without unnecessary delay* for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.") (emphasis added); 8 C.F.R. § 287.3(d) (providing that for aliens arrested on criminal charges without warrant, subject to certain exceptions, "a determination will be made *within 48 hours of the arrest*, except in the event of an emergency or other extraordinary circumstance in which case a determination will be made within an additional reasonable period of time, whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued.").

to comply. Furthermore, on January 22, 2026, Respondents also failed to comply with the Court's January 20, 2026 Text-Only Order requiring a daily update by 5:00 p.m. on the status of Petitioner's return to Minnesota. Only after the Court invoked contempt proceedings and scheduled a hearing that required the attendance of the ICE Officer responsible for Petitioner's return to Minnesota did Respondents return Petitioner to Minnesota.

In sum, Respondents have had ample opportunity to conduct an examination and inspection under § 1159(a). Under the circumstances here, in which Petitioner's detention has far exceeded the permissible 48-hour bounds and Respondents have violated three orders of this Court, the appropriate habeas remedy is immediate release in the District of Minnesota, as set forth below. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

### III. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Petitioner Liban G.'s Emergency Petition for a Writ of Habeas Corpus [Doc. No. 1] is **GRANTED**.

2. Respondents shall release Petitioner from custody **IMMEDIATELY**, **in the District of Minnesota**, but no later than by 5:00 p.m. CST on January 23, 2026.

3. In light of the local weather conditions in which the ground temperature is currently -15 degrees Fahrenheit, Respondents shall provide Petitioner's counsel with at least two hours' notice in advance of his release so that transportation can be arranged from the detention facility. Under no circumstances shall Respondents release him outdoors without coordinating with Petitioner's counsel.

    4.  Respondents shall confirm Petitioner's release within 2 hours of his release.

Dated: January 23, 2026

                                                          s/Susan Richard Nelson
                                                          SUSAN RICHARD NELSON
                                                          United States District Judge